Rice and others v. Brook.

*(Circuit Court, E. D. Wisconsin.   April 18, 1884.)*

1. Factor—Consignment for Sale—Right to Control Sale.
   Where a consignment is made to a factor for sale, the consignor has a right, generally, to control the sale thereof, according to his own pleasure, from time to time, if no advances have been made or liabilities incurred on account of the consignment, and the factor is bound to obey his orders.

2. Same—Advances by Factor—Discretion—Usages of Trade.
   But when the factor has made large advances or incurred expenses on account of the consignment, the principal cannot, by any subsequent orders, control his right to sell at such time as, in the exercise of a sound discretion, and in accordance with the usage of trade, he may deem best to secure indemnity to himself and to promote the interests of the consignor.

3. Same—Advances on Consignments—Respective Duties and Interests.
   A factor who advances money on a consignment is still the agent of the consignor, and must act in good faith, so as to promote the latter's interest, as well as to indemnify himself.

4. Same—Duty of Factor in Responding to Wishes of Consignor.
   If a factor, after making an advance on a consignment and delaying sale of the goods, receives a letter from consignor directing him to sell, he ought to sell as soon as the goods can be made to realize sufficient to reimburse him.

5. .SAME — INFERENCE OF CONSENT TO PAST ACTS TO BE DRAWN FROM DISCRE-
   TIONARY AUTHORITY.
      After a long delay in the sale of wool consigned to a factor, if the consignor,
   with full knowledge of the facts, and uninfluenced by concealment or fraud on
   his factor's part, authorizes the latter to sell at his discretion, he thereby rati-
   fies the action of the factor in not having sold before.

At Law.

*Robert F. Pettibone,* for plaintiffs.

*J. V. Quarles,* for defendant.

DYER, J., *(charging jury.)*   On or about the thirtieth day of Sep-
tember, 1875, the defendant shipped to the plaintiffs, who were wool
commission merchants in Boston, 29 sacks of wool, containing in all
about 5,730 pounds.   The wool was consigned to the plaintiffs, and
was to be sold by them for the account of the defendant.   At the
same time the defendant drew his draft on the plaintiffs for $1,000
on account of the shipment, which draft was paid on presentation,
and the amount of which was to be repaid from the proceeds of
the sale of the wool.   Soon thereafter the defendant drew on the
plaintiffs for the further sum of $1,000, and this draft was also paid.
The consignment appears to have been made generally, and without
any specific orders as to the time or mode of sale of the wool; and
no orders as to the time of sale were given by the defendant to the
plaintiffs prior to the eleventh day of February, 1876.   On that day,
and long after the plaintiffs had made the advances amounting to
$2,000 on account of the consignment, the defendant wrote the plain-
tiffs as follows:

"BURLINGTON, February 11, 1876.

"*Denny, Rice & Co.*—DEAR SIRS: You will please do me the favor of
sorting and selling my wool as soon as you can conveniently, and oblige,
                "Yours respectfully,                         EDWARD BROOK."

To this time the plaintiffs, according to their account of sales in
evidence, had only made sales of the wool to the amount of $81.48.
Between that date and March 16, 1877, it appears from their state-
ment of sales that they made other sales amounting to $457.54, and,
on the last-named day, they sold out the balance of the wool, realiz-
ing therefor $1,419.69; so that the total proceeds of all sales amounted
to $1,958.71.   The plaintiffs charged a commission of 5 per cent. for
making the sales, amounting to $97.93.   They claim to have paid
for insurance, labor, and storage, $19.59, and for freight and cartage,
$97.03.   With interest on their advances, and on the amount paid
for freight and cartage, to March 5, 1877, they make the deficiency
remaining, after accounting for the total sales of the wool, $461.21,
and this suit is brought to recover that amount, with interest, from the
defendant.   Payment of this demand is resisted by him on the ground
that the plaintiffs disregarded his instructions to sell the wool, con-
tained in his letter of February 11th, and he claims that if the wool
had been sold during that month more than enough would have been
realized to reimburse the plaintiffs the amount of their advances and

other demands before enumerated. Considerable testimony has been introduced concerning the quality and character of the wool, and the state of the Boston market between February, 1876, and March, 1877, and numerous letters which passed between the parties have been read in evidence. In one or more of the letters the plaintiffs called on the defendant, because of the state of the market and of their alleged inability to sell the wool for a satisfactory price, to return to them $500 of the advances they had originally made on the consignment, and on the sixteenth day of May, 1876, the defendant wrote the plaintiffs complaining of their failure to sell the wool as requested in his letter of February 11th. This letter was followed by one from the plaintiffs explanatory of the reasons why the wool had not been sold, and in reply thereto the defendant, on the fifth of June, 1876, wrote the plaintiffs, and authorized them to exercise their discretion with reference to the time when the wool should thereafter be sold.

The plaintiffs, in the transactions in question, stood towards the defendant in the relation of factors. Where a consignment is made to a factor for sale, the consignor has a right, generally, to control the sale thereof according to his own pleasure, from time to time, if no advances have been made or liabilities incurred on account of the consignment, and the factor is bound to obey his orders. This arises from the ordinary relation of principal and agent. But when the factor has made large advances or incurred expenses on account of the consignment, the principal cannot, by any subsequent orders, control his right to sell at such a time as, in the exercise of a sound discretion, and in accordance with the usage of trade, he may deem best, to secure indemnity to himself and to promote the interests of the consignor. *Feild* v. *Farrington,* 10 Wall. 149.

The rule on this subject has been laid down by the supreme court in the case of *Brown* v. *McGran,* 14 Pet. 479, as follows:

"Where the consignment is made generally, without any specific orders as to the time or mode of sale, and the factor makes advances or incurs liabilities on the footing of such consignment, there the legal presumption is that the factor is intended to be clothed with the ordinary rights of factors to sell, in the exercise of a sound discretion, at such time and in such mode as the usage of trade and his general duty require, and to reimburse himself for his advances and liabilities out of the proceeds of the sale; and the consignor has no right, by any subsequent orders, given after advances have been made or liabilities incurred by the factor, to suspend or control this right of sale, except so far as respects the surplus of the consignment not necessary for the reimbursement of such advances or liabilities."

By making the advances of $2,000 to the defendant, the plaintiffs acquired a special interest or property in the wool, and therefore they held it for their own indemnity as well as for the benefit of the defendant. The consignment of wool, it is undisputed, was made without any specific orders in the first instance as to the time of sale, and it is not denied that the advances were made on account of such

consignment and before the order contained in the defendant's letter of February 11, 1876. This being so, and applying to the case the rule of law I have stated, the defendant could not, after those advances were made, control absolutely, by any specific order, the plaintiff's right to sell at such a time as, in the exercise of proper discretion and in accordance with the usage of trade, they might deem it best to sell, for the purpose of indemnifying themselves and at the same time promoting the interests of the defendant. So, gentlemen, it being undisputed that the wool was shipped by the defendant to the plaintiffs to be sold by them, without any specific orders in the first instance, as to the time or manner of sale, and that before any such orders were given the plaintiffs made advances and incurred expenses on account of the consignment, I instruct you that if the plaintiffs could not sell the wool within a reasonable time after receiving the letter of February 11th, for enough to fully reimburse them for their advances and expenditures, and if they exercised a sound discretion, and acted in good faith, and with reasonable care and diligence, in selling the wool, having in view their own indemnity and the interests of the defendant, and if the proceeds of the sales so made did not amount to a sufficient sum to reimburse the plaintiffs for their advances, with interest, and their proper charges for services and necessary disbursements for freight, insurance, storage, and labor,— then the plaintiffs are entitled to recover. Although the plaintiffs had made advances to the defendant, they were still his factors, and under the obligations of factors. They were still his agents to sell the wool, and they were bound to act in good faith towards him, and so as to promote his interests as far as possible, as well as to secure indemnity to themselves. If, therefore, within a convenient time after receiving the letter of February 11, 1876, the plaintiffs, in the exercise of reasonable discretion, and according to the usage of trade, could have sold the wool for more than enough to have fully reimbursed them for their advances and expenditures, then I think they were bound to make the sale; but not unless they could thereby fully secure reimbursement to themselves. With reference to the order contained in the letter of February 11th, I ought to say, further, that if the defendant wrote the letter of June 5, 1876, with full knowledge of all the facts, and without any fraud or concealment of facts on the part of the plaintiffs, then he must be held to have ratified the action of the plaintiffs in not selling immediately under the specific order of February 11th. The plaintiffs had no right to delay the sale of the wool by the want of reasonable skill and efforts on their part; and if the loss which they here ask the defendant to make good to them was occasioned by their own want of good faith, or by their failure to exercise reasonable care, discretion, and diligence in selling the wool, then they should themselves bear that loss, and in that event they are not entitled to recover. Reasonable care and diligence in such case means such care and diligence as an ordinarily

‗rudent and diligent man would exercise in the circumstances in which the plaintiffs were placed, with reference to his own property, taking into consideration the usage of trade, the state of the market, and the situation of the property. Failure to find a purchaser of the wool would not of itself constitute neglect of duty, provided such failure was not attributable to any want of reasonable care and diligence on the part of the plaintiffs.

\* \* \* \* \* \* \* \*

If you find for the plaintiffs, you will assess their damages at such sum as will repay them the difference between the proceeds of the sales of the wool and the aggregate amount of their advances, commissions, and disbursements for freight, cartage, labor, insurance, and storage, with an allowance of interest at 6 per cent., the legal rate in Massachusetts.